UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN THOMAS LONDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 09 C 7797 |
| vs. | ) |
| | ) Judge Feinerman |
| JOHN HARRIS, DANIEL ATHEARN, and UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this action, Plaintiff Steven Thomas London brings a Fourth Amendment false arrest claim against Veterans Administration ("VA") police officers John Harris and Daniel Athearn under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and a malicious prosecution claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, which provides in relevant part that common law malicious prosecution claims seeking money damages against federal law enforcement officers for actions undertaken in the course of their official duties can and must proceed only against the United States. *Id.* §§ 2679(b)(1), 2680(h); *see Sobitan v. Glud*, 589 F.3d 379, 382-83 (7th Cir. 2009); *Nguyen v. United States*, 556 F.3d 1244, 1250-57 (11th Cir. 2009); *Alexander v. Mt. Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 891 (7th Cir. 2007). Defendants have moved for summary judgment. The motion is granted as to the Fourth Amendment claim and denied as to the malicious prosecution claim.

## Background

The facts are stated as favorably to London as the record permits. On September 5, 2008, London parked in the wrong lot at a VA hospital outside Chicago, visited his physician, and returned to find Officers Harris and Athearn standing near his car, a ticket on his windshield, and a tow truck approaching. Athearn was just outside of the driver's side door, while Harris was positioned fifteen feet away. In an effort to avoid the tow, London hurried towards the scene, grabbed the ticket off the windshield, opened the driver's side door, and entered the car. No words were exchanged as London approached and entered the car.

What happened as London passed Athearn and opened the door is the subject of some dispute. Defendants assert that London's right elbow struck Officer Athearn's arm. London concedes that *some* physical contact was made, but he asserts that the contact was, at most, an unintentional and inadvertent brushing. Doc. 38 at 5. At his deposition, London denied that he made contact with his elbow, but when pressed for the basis for his denial, he replied, "I'm not exactly sure. I can't be a hundred percent positively sure if my elbow, you know, touched him. It could've been another part of my body." Doc. 39-3 at 44-45.

After London was seated in the car, Officer Athearn held open the door and asked him where he was going. London replied that he was going to leave before his car was towed. Athearn ordered London out of the car, and Harris stated, "Didn't you see him brush you? That's battery." Doc. 39-3 at 41. The officers arrested London for battery under Illinois law. London elected a bench trial; the state trial judge denied London's motion for a directed verdict after the prosecution rested, but acquitted London after hearing all the evidence. London then brought this suit.

**Discussion**

Defendants have moved for summary judgment on the Fourth Amendment claim against Harris and Athearn and on the malicious prosecution claim against the United States.

**I.    Fourth Amendment False Arrest Claim**

Harris and Athearn contend that they are entitled to qualified immunity on London's *Bivens* claim.  "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).  "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid*.

The first question in the qualified immunity analysis is whether, construing the record in the light most favorable to London, the arrest violated the Fourth Amendment.  To prevail on a Fourth Amendment false arrest claim, a plaintiff must demonstrate that the arrest was made without probable cause.  *See McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest.").  "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *Ibid*.; *see also Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) ("A police officer has probable cause to arrest a person if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'") (quoting *Michigan v.*

*DeFillippo*, 443 U.S. 31, 37 (1979)). "Probable cause is a common-sense determination, measured under a reasonableness standard. … It is an objective test, based upon factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Humphrey v. Staszak*, 148 F.3d 719, 726 (7th Cir. 1998) (internal quotation marks omitted).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law. Federal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed." *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001) (internal quotation marks omitted). At the time of the incident, the Illinois battery statute provided that "[a] person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of insulting or provoking nature with an individual." 720 ILCS 5/12-3 (2008); *see Gonzalez*, 578 F.3d at 538-39; *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). Because Athearn suffered no "bodily harm," this case concerns the "insulting or provoking" type of battery. "[A] particular physical contact may be deemed insulting or provoking based upon factual context in which it occurs," regardless of whether there was a specific intent to insult or provoke. *People v. Peck*, 633 N.E.2d 222, 223-24 (Ill. App. 1994) (internal quotation marks omitted). Illinois courts have found insulting or provoking a parent angrily poking his finger into his son's teacher's chest, *see People v. Dunker*, 577 N.E.2d 499, 502 (Ill. App. 1991), a person spitting in a police officer's face, *see Peck*, 633 N.E.2d at 223, and a person sitting unnecessarily close to a former friend and placing his knee against her hip, *see People v. DeRosario*, 921 N.E.2d 753, 755-56 (Ill. App. 2009).

To survive the first prong of the qualified immunity analysis, London must "raise a genuine issue regarding whether the officers had probable cause to arrest him" for battery. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). Athearn and Harris contend that no reasonable jury could find that they lacked probable cause, even accepting London's contention that he merely brushed Athearn on his way into the car. "As a general matter, physical contact between an arrestee and a law enforcement officer, however minor, can provide probable cause for an arrest for battery." *Adeszko v. Degnan*, 2006 WL 3469541, at *5 (N.D. Ill. Nov. 29, 2006); *see Chelios*, 520 F.3d at 686 (poking police officer in the chin). But that proposition is true as a *general* matter, not categorically. It cannot be that *any* contact with a civilian—an accidental brush at Taste of Chicago, an inadvertent bump on the El, or an incidental shoulder while exiting Wrigley Field—may be deemed an insult or provocation sufficient to justify an arrest for battery. *See Mihalko v. Daley,* 2002 WL 726917, at *6 (N.D. Ill. Apr. 24, 2002) (denying summary judgment on false arrest claim where, viewing the facts in plaintiff's favor, the only contact was an "unintentional brushing against [the officer] with [plaintiff's] clothing").

The Seventh Circuit has instructed that "[t]he probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts *or* the reasonable inferences to be drawn from them." *Chelios*, 520 F.3d at 686 (emphasis added). If a jury credits London's version of the facts regarding the nature of his contact with Officer Athearn, it then could infer that the facts known to an officer in Athearn's and Harris's shoes demonstrated that London was the car's owner, that he was in a panicked rush to leave before the tow truck arrived, and that he inadvertently brushed up against Athearn while entering his car. To be sure, a reasonable jury need not accept London's version of the facts and, even if it did, it need not draw

the foregoing inference. But because a reasonable jury could do both those things, the existence of probable cause—and therefore the question whether the arrest violated the Fourth Amendment—is a jury issue that cannot be resolved on summary judgment.

The second prong of the qualified immunity analysis ordinarily would focus on whether the Fourth Amendment right at issue "was clearly established" in September 2008, when the relevant events occurred. *McAllister*, 615 F.3d at 881. But the inquiry is modified somewhat in the false arrest context. "Although the constitutional right to be free from arrest without probable cause [is] well-established," Harris and Athearn are entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey*, 148 F.3d at 725; *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (internal quotation marks omitted). The Seventh Circuit has characterized this principle as one of "[a]rguable probable cause," which entitles a Fourth Amendment false arrest defendant to qualified immunity if "'a reasonable police officer in the same circumstances and with the same knowledge … as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Carmichael v. Village of Palatine*, 605 F.3d 451, 459 (7th Cir. 2010) (quoting *Williams*, 269 F.3d at 781); *see also Lee v. Sandberg*, 136 F.3d 94, 103-04 (2d Cir. 1997); *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997).

Arguable probable cause exists here because, under the circumstances set forth above, a reasonable police officer in Athearn's or Harris's position reasonably *could* have perceived London's brushing to be intentional, passive-aggressive contact by an individual annoyed by the ticket on his windshield and by the imminent prospect of being towed. This conclusion is not inconsistent with the court's earlier holding that, viewing the facts as London does, there was no

probable cause. *See Carmichael*, 605 F.3d at 459 ("Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an additional layer of protection against civil liability if a reviewing court finds that they did not have probable cause.") (internal quotation marks omitted). As the Seventh Circuit has instructed,

> *Malley* [*v. Briggs*, 475 U.S. 335 (1986)] ... created room for an immunity defense even in cases where there was no probable cause for the arrest, by holding that if officers of reasonable competence could disagree on whether there was probable cause, the defendant would be immune from damages liability. ... In other words, only if *no reasonable officer* could have mistakenly believed that he had probable cause to arrest is the immunity forfeited.

*Wollin v. Gondert*, 192 F.3d 616, 625-26 (7th Cir. 1999) (emphasis added) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)). It would be wrong to hold that *no* reasonable officer could have mistakenly viewed London's contact with Athearn to be insulting or provoking.

Although there may not be many cases where arguable probable cause exists but probable cause does not, this case is among them. *See Humphrey*, 148 F.3d at 728 ("[a] review of the evidence in this case shows that, although [defendant] may not have had actual probable cause, at the very least he had 'arguable' probable cause to arrest [plaintiff]"); *Gold*, 121 F.3d at 1446 ("[T]he arguable probable cause inquiry is distinct from the actual probable cause inquiry. It is clear from the facts viewed in the light most favorable to [plaintiff] that the officers did not have actual probable cause to arrest [plaintiff] for disorderly conduct. That said, the officers nonetheless are entitled to qualified immunity. [T]he qualified immunity standard gives ample room for mistaken judgments. … This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued.") (citation

and quotation marks omitted); *Lee*, 136 F.3d at 103 ("A review of the circumstances of this case reveals that while the State Troopers, as stipulated, did not in fact have actual probable cause to arrest the plaintiff, they certainly had 'arguable' probable cause, and accordingly, it was objectively reasonable for the State Troopers to believe that probable cause existed."); *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995) ("Perhaps a rational jury could find that the officers lacked probable cause and should not have arrested [plaintiff]; however, in our view, a rational jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice."). It follows that Harris and Athearn are entitled to summary judgment on London's Fourth Amendment false arrest claim.

## II. Malicious Prosecution Claim

The United States seeks summary judgment on London's malicious prosecution claim. Under Illinois law, a malicious prosecution plaintiff must prove that: "(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (emphasis removed and citation omitted); *see also Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010). The absence of any one element bars the claim. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

The United States' submission that no reasonable factfinder could find for London on the third element, probable cause, is rejected for the reasons stated above. (Unlike Harris and Athearn, the United States does not invoke qualified immunity, which does not apply to common law tort actions brought under the FTCA.) The United States also contends that no reasonable

factfinder could find the fourth element, that Harris and Athearn acted with malice. The contention is incorrect.

"Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Holland v. City of Chicago*, __ F.3d __, 2011 WL 2473473, at *5 (7th Cir. June 23, 2011) (internal quotation marks omitted). Although malice cannot rest merely on an allegation that the plaintiff "was arrested without probable cause," *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998), a "trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes that inference." *Frye v. O'Neill*, 520 N.E.2d 1233, 1242 (Ill. App. 1988); *see also Holland*, 2011 WL 2473473, at *5 ("malice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith"); *Aguirre v. City of Chicago*, 887 N.E.2d 656, 663 (Ill. App. 2008). Moreover, "[w]here two conflicting inferences may be drawn from the evidence—one of good faith actions on the part of the defendant and the other of actions inconsistent with good faith or, in other words, malicious actions—the question whether the defendant acted with malice is for the trier of fact to determine." *Frye*, 520 N.E.2d at 1242.

Here, a reasonable factfinder—viewing the record and drawing inferences in London's favor—could conclude that Harris and Athearn acted with malice and out of spite in pursuing a battery prosecution against London. At Athearn's deposition, when asked why he arrested London and why he deemed the physical contact insulting or provoking, Athearn replied, "It's an offense to the office." Doc. 34-1 at 80. And when the prosecutor asked Athearn whether he wished to proceed with the case, Athearn replied in the affirmative, explaining "I felt insulted, provoked, shocked because it was an affront not only to myself but the office." Doc. 39-2 at 105. This evidence could lead a reasonable factfinder to conclude that the officers initiated and

pursued the battery prosecution due to a perceived affront to their authority, not due to a good faith belief that London had committed an actual battery under Illinois law and deserved to be brought to justice. *See Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 815 (N.D. Ill. 2002) ("Payback is an improper motive for a prosecution."). It follows that summary judgment on the malicious prosecution claim is precluded.

## Conclusion

Defendants' motion for summary judgment is granted as to London's Fourth Amendment claim and denied as to his malicious prosecution claim. The malicious prosecution claim will proceed against the United States at a bench trial. *See* 28 U.S.C. § 2402. Harris and Athearn are dismissed as party defendants.

July 11, 2011

_____
United States District Judge