UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN THOMAS LONDON, | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 7797 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JOHN HARRIS, DANIEL ATHEARN, and UNITED | ) | |
| STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Acting *pro se*, Steven Thomas London brought this suit against Department of Veterans

Affairs ("VA") police officers John Harris and Daniel Athearn, the United States, and other

defendants. Doc. 1. After certain defendants moved to dismiss, Doc. 14, counsel appeared for

London and filed an amended complaint, Doc. 20. The amended complaint states a Fourth

Amendment false arrest claim against Harris and Athearn under *Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and a malicious prosecution claim

against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346,

2671-2680. The FTCA provides in relevant part that common law malicious prosecution claims

seeking money damages against federal law enforcement officers for actions taken in the course

of their official duties can and must proceed only against the United States. *Id*. §§ 2679(b)(1),

2680(h); *see Sobitan v. Glud*, 589 F.3d 379, 382-83 (7th Cir. 2009); *Nguyen v. United States*,

556 F.3d 1244, 1250-57 (11th Cir. 2009); *Alexander v. Mt. Sinai Hosp. Med. Ctr.*, 484 F.3d 889,

891 (7th Cir. 2007).

The court granted summary judgment to Harris and Athearn on the Fourth Amendment claim and denied summary judgment on the malicious prosecution claim. 2011 WL 2683158 (N.D. Ill. July 11, 2011). The court then held a bench trial on the malicious prosecution claim, Doc. 63, and received written closing arguments from the parties, Docs. 64, 68-69. Pursuant to Federal Rule of Civil Procedure 52, the court enters the following Findings of Fact and Conclusions of Law. To the extent that any Findings of Fact may be considered Conclusions of Law, they shall be deemed Conclusions of Law, and to the extent that any Conclusions of Law may be considered Findings of Fact, they shall be deemed Findings of Fact. After considering the admissible evidence and assessing the credibility of the witnesses, and adopting the parties' statement of uncontested facts (Doc. 58 at pp. 5-7), the court finds that London was not maliciously prosecuted and therefore enters judgment in favor of the United States on the malicious prosecution claim.

### Findings of Fact

1.      The Edward Hines, Jr. VA Hospital ("Hines") serves veterans in the Chicago area. Hines is located on federal property and has its own police service. Doc. 58 at p. 5, ¶ 1.

2.      Hines provides free parking to all patients. Doc. 58 at p. 5, ¶ 2.

3.      London traveled to Hines on September 5, 2008 for a urology appointment. Doc. 58 at p. 5, ¶ 3.

4.      The appointment was for 2:45 or 3:00 p.m., and London was late, arriving at Hines at about the time for which his appointment was scheduled. Doc. 58 at p. 5, ¶ 4.

5.      Because he was running late, London chose not to park in his normal parking space. Doc. 58 at p. 5, ¶ 5.  London normally parked in the Illinois, Iowa, Wisconsin, South Dakota, or Minnesota Parking Lots.  Tr. 81 (London).

6.      Seeing that the Pennsylvania Parking Lot was not full, London drove past a "Do Not Enter" sign and parked his vehicle in the lot.  Doc. 58 at p. 5, ¶ 6; Tr. 81-82 (London).  London saw the "Do Not Enter" sign before driving past it.  Tr. 95, 97 (London).

7.      The "Do Not Enter" sign was affixed to one of two construction horses that had been placed in the middle of the driveway, blocking a direct entry to the Pennsylvania Parking Lot.  Doc. 58 at p. 5, ¶ 7; Pl. Exh. 5 at 1-2; Tr. 10 (Athearn); Tr. 82 (London).  Another sign stating "Employee Parking Only" was posted to the right of the Pennsylvania Parking Lot entrance that London used.  Doc. 58 at p. 5, ¶ 8.

8.      London parked his car in the northwest corner of the Pennsylvania Parking Lot. Doc. 58 at p. 5, ¶ 9; Tr. 17 (Athearn).

9.      A sign near the main entrance to the Hines facility stated in relevant part: "Illegally parked vehicles towed at owner expense."  Tr. 42-43, 54-55 (Athearn); Def. Exh. J.

10.     London left his car in the Pennsylvania Parking Lot and went to his appointment. Doc. 58 at p. 5, ¶ 10.

11.     After London parked in the Pennsylvania Parking Lot, Veterans Affairs Police Officer Daniel Athearn entered the lot and saw London's car.  Doc. 58 at p. 6, ¶ 11.

12.     Officer Athearn determined that London's car had not been parked by a valet. Doc. 58 at p. 6, ¶ 12; Tr. 46-47 (Athearn).  Officer Athearn credibly testified at trial that London had parked his car in a section of the lot reserved for valet parking.  Tr. 38-41 (Athearn).

-3-

13.     Officer Athearn wrote a ticket for parking in a non-parking area and placed it on the windshield of London's car.  Doc. 58 at p. 6, ¶ 13; Pl. Exh. 6; Tr. 7-8 (Athearn).

14.     As Officer Athearn wrote the ticket, Veterans Affairs Police Officer John Harris called for a tow truck.  Doc. 58 at p. 6, ¶ 14; Tr. 13-14 (Athearn).  Officer Athearn then filled out a Vehicle Tow Report.  Pl. Exh. 7.  Officer Athearn credibly testified at trial that he ticketed London's car and called for a tow because the car was illegally parked and because he wanted to remove it from the valet parking lot.  Tr. 43, 46-47 (Athearn).

15.     London's car was not the only car that Officer Athearn designated for towing from the Pennsylvania Parking Lot that day.  Tr. 45 (Athearn).  Athearn designated one other car for towing from that lot due to its being illegally parked.  Tr. 45-46, 55-56 (Athearn).

16.     When London returned from his appointment, he saw two police vehicles adjacent to his car and an approaching tow truck.  Doc. 58 at p. 6, ¶ 15.  London saw this while he was walking from Building 200 (the main hospital building) towards the Pennsylvania Parking Lot.  Tr. 18, 42 (Athearn); Tr. 84 (London).

17.     Upon realizing that his car was about to be towed, London either walked quickly or ran to his car.  Tr. 68 (Harris); Tr. 84-85 (London).  London was nervous and a "bit" panicked that his car was about to be towed.  Tr. 94-95 (London).

18.     Neither Officer Athearn nor Officer Harris spoke to London as he approached his car, and London did not then speak to either officer.  Doc. 58 at p. 6, ¶ 17; Tr. 20 (Athearn); Tr. 86, 98 (London).  At that time, Officer Athearn did not know London, and neither officer had met London.  Tr. 16-17 (Athearn); Tr. 88 (London).

19.     As London reached his car, Officer Athearn was standing near the driver's side door, about three to six feet away, and Officer Harris was about fifteen feet away.  Doc. 58 at p. 6, ¶ 18; Tr. 19-20, 48 (Athearn).  Officer Athearn was facing the rear of the car and away from the medical building from which London was approaching.  Tr. 19-20, 22-23, 48 (Athearn).

20.     When London reached his car, it was not hooked up to a tow truck.  Doc. 58 at p. 6, ¶ 16.

21.     Officer Athearn turned to his left upon sensing London's approach.  Tr. 23, 49 (Athearn).  Officers Athearn and Harris credibly testified that as London passed between Athearn and the car, London elbowed Athearn.  Tr. 49 (Athearn); Tr. 61-63, 70-72, 75 (Harris).

22.     After that, London removed the ticket from his windshield.  Doc. 58 at p. 6, ¶ 19; Tr. 24, 49 (Athearn).  Officers Athearn and Harris credibly testified that when London passed back between Athearn and the car, London elbowed Athearn again.  Tr. 49 (Athearn); Tr. 72-73, 75 (Harris).

23.     At trial, London acknowledged that he may have brushed against Officer Athearn and that it is possible that his elbow made contact with Officer Athearn, but he denied having intentionally made contact with Athearn.  Tr. 87, 103 (London).

24.     At the time of the incident, Officer Athearn was five feet six inches and weighed about 150 pounds, while London weighed between 215–240 pounds.  Tr. 50 (Athearn); Tr. 98-99 (London).

25.     London then entered his car, threw the ticket on his seat, and took out his keys. Tr. 24, 49-50 (Athearn).

26.      Officer Athearn then asked London, "Where are you going?", and London responded, "I'm leaving before you have my car towed."  Doc. 58 at p. 6, ¶ 20; Tr. 87-88 (London).  It was London's intent to drive his car away before it was towed.  Tr. 99 (London).

27.      Officer Athearn told London to step out of the car three of four times; London did not comply.  Tr. 24-25, 50 (Athearn).  Officer Harris then ordered London to exit his car, and London complied.  Doc. 58 at p. 6, ¶ 21; Tr. 25, 50-51 (Athearn); Tr. 74 (Harris); Tr. 88 (London).

28.      Officer Athearn credibly testified that when London exited his car, he struck Athearn in the right upper forearm with his left elbow.  Tr. 25-26 (Athearn).  Officer Harris did not see London strike Athearn when London exited his car, Tr. 61-62 (Harris), but the court nonetheless credits Athearn's testimony that London did elbow Athearn as he exited his car.

29.      Officer Harris asked London why he had struck Officer Athearn, and London denied striking Athearn.  Tr. 51 (Athearn); Tr. 67 (Harris); Tr. 89-90 (London).

30.      The officers then handcuffed London and placed him under arrest.  Doc. 58 at p. 6, ¶ 22; Tr. 27-28, 51-52 (Athearn); Tr. 90 (London).

31.      London did not ask the officers why he was being placed under arrest.  Tr. 104 (London).

32.      During his encounter with Officers Athearn and Harris, London was "having images" of gouging out the officers' eyes.  Tr. 121-123 (London).  Those "images" were related to London's disability.  Tr. 123 (London).

33.      Officer Athearn signed a criminal complaint, charging London with the offense of battery.  The complaint alleged that London made "physical contact of a provoking nature with

Officer Athearn in that he knowingly and intentionally struck Officer Athearn on the Officer's right upper forearm with his left elbow upon exiting his vehicle and that he also pushed the officer aside."  Doc. 58 at pp. 6-7, ¶ 23; Pl. Exh. 8; Tr. 4-5, 7, 26-27 (Athearn).

34.      At the time of the incident, the relevant statute defined battery in relevant part as "mak[ing] physical contact of insulting or provoking nature with an individual," and did not require that the victim have suffered bodily harm.  Tr. 26-27 (Athearn); 720 ILCS 5/12-3 (2008).

35.      Officer Athearn credibly testified that he concluded that London's physical contact with him was intentional, not accidental, because London did not apologize for the contact, because London did not offer an excuse for the contact, and because London had a very unhappy expression on his face at the time.  Tr. 30-33 (Athearn).

36.      Captain Michael Leonard, a VA criminal investigator, approved the filing of the battery charge against London.  Tr. 52 (Athearn); Tr. 137 (Leonard).

37.      Before approving the charges, Captain Leonard attempted to question London about the incident.  Tr. 136 (Leonard).  London was loud, boisterous, belligerent, and profane, and indicated that he may have brushed up on an officer or pushed him as he was reaching for the ticket.  Tr. 137 (Leonard).  London's behavior contributed to Leonard's view that Officer Athearn's and Harris's description of the underlying events was accurate.  Tr. 137 (Leonard).

38.      When London was in police custody, Officers Harris and Athearn treated him well.  Tr. 105-107 (London).

39.      Before the criminal trial commenced, Officer Athearn told the prosecutor that he wanted to proceed with the prosecution.  Tr. 6 (Athearn).

40.     After considering all of the evidence—including Officer Athearn's testimony; London's admission in court that his elbow may have made contact with Athearn; London's statement to Captain Leonard that he may have pushed Athearn; the fact that London was a much larger man than Athearn; the fact that London was visibly unhappy due to the ticket and the prospective tow; and the fact that London's elbow made contact with Athearn three times, which indicates that the contact was not accidental—the court finds as a factual matter that London's elbow made contact with Athearn's person when London exited his car and that Athearn actually and reasonably concluded that the contact was intentional and intended to insult or provoke him.

41.     After considering all of the evidence—including London's and Athearn's demeanor on the stand; and London's state of mind at the relevant time, which was nervous and panicked and beset with disturbing "images"—the court finds as a factual matter that Officer Athearn's testimony regarding his encounter with London is more accurate than London's testimony.

42.     After considering all of the evidence—including Officer Athearn's testimony regarding why he concluded that London had intentionally made physical contact with him; the fact that Athearn had never met London before September 5, 2008; the fact that Athearn arranged for at least one other car to be towed from the Pennsylvania Parking Lot that day; the fact that Athearn treated London nicely while London was in police custody; and the court's finding that London's elbow made contact with Athearn's person twice before London entered his car and once when he was exiting his car—the court finds as a factual matter that Athearn and Captain Leonard initiated and pursued criminal proceedings against London due to an honest

-8-

and reasonable belief that London had in fact committed a battery against a police officer when

London was exiting his vehicle, and for no other reason.

43.     The criminal case against London was tried to the bench on December 9, 2008, in

the Circuit Court of Cook County, Illinois.  Def. Exh. K.  London was found not guilty.  *Id*. at

60-62; Doc. 58 at p. 7, ¶ 24.

44.     The ticket that London received on September 5, 2008, was dismissed.  Tr. 92

(London); Pl. Exh. 12.

## Conclusions of Law

Because the underlying events occurred in Illinois, Illinois law governs London's

malicious prosecution claim.  *See* 28 U.S.C. § 1346(b); *Midwest Knitting Mills, Inc. v. United

States*, 950 F.2d 1295, 1297 (7th Cir. 1991).  Illinois law provides that a malicious prosecution

plaintiff must prove that: "(1) the defendant commenced or continued an original criminal or

civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an

absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages

resulting to the plaintiff."  *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (emphasis

removed and citation omitted); *see also Porter v. City of Chicago*, 912 N.E.2d 1262, 1265 (Ill.

App. 2009); *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011); *Mosley v. City of

Chicago*, 614 F.3d 391, 399 (7th Cir. 2010).  The absence of any one element defeats the claim.

*See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).  The court concludes that London has

failed to satisfy the third element, lack of probable cause, and the fourth element, malice.

The Seventh Circuit recently described in *Holland v. City of Chicago*, *supra*, the probable

cause element of the common law malicious prosecution tort.  "An officer has probable cause

when there are 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person … in believing, in the circumstances shown, that the suspect has committed' a crime." 643 F.3d at 254 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) (ellipses in original); *see also Mosley*, 614 F.3d at 399. "To make the probable cause determination, [the court] 'step[s] into the shoes of a reasonable person in the position of the officer.'" *Holland*, 643 F.3d at 254 (quoting *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). "For purposes of a malicious prosecution claim, the pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest." *Ibid*.

The evidence overwhelmingly demonstrates that Officer Athearn had probable cause to believe that London had committed battery. At the time of the incident, the Illinois battery statute provided that "[a] person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of insulting or provoking nature with an individual." 720 ILCS 5/12-3 (2008); *see Gonzalez v. City of Elgin*, 578 F.3d 526, 538-39 (7th Cir. 2009); *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). Because Athearn suffered no "bodily harm," this case concerns the "insulting or provoking" type of battery. "[A] particular physical contact may be deemed insulting or provoking based upon factual context in which it occurs." *People v. Peck*, 633 N.E.2d 222, 223-24 (Ill. App. 1994) (internal quotation marks omitted). Illinois courts have found insulting or provoking a parent angrily poking his finger into his son's teacher's chest, *see People v. Dunker*, 577 N.E.2d 499, 502 (Ill. App. 1991), a person spitting in a police officer's face, *see Peck*, 633 N.E.2d at 223, a person spitting on a police officer's torso and arm, *see*

-10-

*People v. Wrencher*, 959 N.E.2d 693, 703 (Ill. App. 2011), and a person sitting unnecessarily close to a former friend and placing his knee against her hip, *see People v. DeRosario*, 921 N.E.2d 753, 755-56 (Ill. App. 2009). Noting that "Illinois follows the common law rule that any contact, however slight, may constitute a battery," the Seventh Circuit suggested that "an individual angry at being given a parking ticket might crumple up the ticket and throw it on the ground and face charges of aggravated battery if the ticket hit the issuing officer's shoe." *Garcia-Meza v. Mukasey*, 516 F.3d 535, 538 (7th Cir. 2008); *see also Gluszek v. Linkletter*, 1997 WL 769464, at *3 (N.D. Ill. Dec. 9, 1997) (elbowing a police officer in the stomach).

"As a general matter, physical contact between an arrestee and a law enforcement officer, however minor, can provide probable cause for an arrest for battery." *Adeszko v. Degnan*, 2006 WL 3469541, at *5 (N.D. Ill. Nov. 29, 2006); *see Chelios*, 520 F.3d at 686 (poking police officer in the chin). The court's summary judgment opinion recognized that this principle, while true as a general matter, may not be categorical: "It cannot be that *any* contact with a civilian—an accidental brush at Taste of Chicago, an inadvertent bump on the El, or an incidental shoulder while exiting Wrigley Field—may be deemed an insult or provocation sufficient to justify an arrest for battery. *See Mihalko v. Daley,* 2002 WL 726917, at *6 (N.D. Ill. Apr. 24, 2002) (denying summary judgment on false arrest claim where, viewing the facts in plaintiff's favor, the only contact was an "unintentional brushing against [the officer] with [plaintiff's] clothing")." 2011 WL 2683158, at *3. But the evidence at trial demonstrated that London delivered more than an inadvertent bump, an accidental brush, or an incidental shoulder. London elbowed Officer Athearn three times, and Athearn sincerely and reasonably concluded under the circumstances that the third elbow—the contact charged in the criminal

complaint—was intentional and designed to insult and provoke him. There was probable cause for the prosecution, a conclusion that London's acquittal does not undermine. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010) ("The fact that [the malicious prosecution plaintiff] was eventually acquitted and now offers an innocuous explanation for the phone calls does not negate the existence of probable cause at the relevant time."); *Turner v. City of Chicago*, 415 N.E.2d 481, 485 (Ill. App. 1980) ("A person should not be held liable for malicious prosecution upon a failure to convict the person accused. It is sufficient if there is probable cause, whether the accused is in fact guilty or not.").

London argues that the probable cause standard for the Illinois malicious prosecution tort is "much higher" than the Fourth Amendment probable cause standard: "Rather than the 'probability or a substantial chance of criminal activity,' the Illinois tort of malicious prosecution requires facts 'as would lead a man of ordinary caution and prudence to believe or to entertain an honest and strong suspicion that the person arrested is guilty.'" Doc. 64 at 4 (quoting *Glenn v. Lawrence*, 117 N.E. 757, 759 (Ill. 1917)) (some internal quotation marks omitted); *see also* Doc. 69 at 4. London is incorrect; Seventh Circuit precedent repeatedly and uniformly treats probable cause for Illinois malicious prosecution purposes as identical to probable cause under the Fourth Amendment. *See Larsen v. Elk Grove Vill., Ill.*, 433 F. App'x 470, 473 (7th Cir. 2011) (holding that the plaintiff failed to establish the probable cause element of his malicious prosecution claim based solely on the court's prior holding that the defendants had probable cause under the Fourth Amendment to arrest the plaintiff); *Holland*, 643 F.3d at 254 (quoting Fourth Amendment cases in describing the probable cause element of the malicious prosecution tort); *Brown v. Vill. of Romeoville, Ill.*, 407 F. App'x 56, 58 (7th Cir. 2011) (same as *Larsen*); *Wooden-Ousley v. City of*

*Chicago*, 393 F. App'x 378, 381 (7th Cir. 2010) (same as *Larsen*); *Swearnigen-El*, 602 F.3d at

863 (same as *Holland*); *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir.

2010) (same as *Larsen*).  Illinois reviewing courts are in accord.  *See Ross v. Mauro Chevrolet*,

861 N.E.2d 313, 319-20 (Ill. App. 2006) (holding that "the officers' probable cause to arrest

plaintiff proves fatal to her claim of malicious prosecution"); *Johnson v. Target Stores, Inc.*, 791

N.E.2d 1206, 1225 (Ill. App. 2003) (holding that the Fourth Amendment probable cause standard

and the malicious prosecution probable cause standard "are, for all purposes, equal").

In any event, even if London were correct that the probable cause standard is more

stringent for malicious prosecution purposes than for Fourth Amendment purposes, Officer

Athearn had probable cause under the more stringent standard.  For the reasons given above,

Athearn quite plainly was presented with "facts as would lead a man of ordinary caution and

prudence to believe or to entertain an honest and strong suspicion that the person arrested is

guilty," Doc. 64 at 4, and quite clearly "believed that a finder of fact would conclude, beyond a

reasonable doubt, that [London] had struck or pushed [him] when [London] came out of his

vehicle," *id*. at 8.

Because London does not satisfy the probable cause element of his malicious prosecution

claim, the claim fails.  *See Porter*, 912 N.E.2d at 1271 ("probable cause is an absolute defense to

malicious prosecution").  The court adds for good measure that London also has failed to

establish the malice element of his claim.  "Malice is defined as the initiation of a prosecution

for any reason other than to bring a party to justice." *Holland*, 643 F.3d at 255 (internal

quotation marks omitted).  As the court determined in the Findings of Fact, Officer Athearn and

Captain Leonard initiated and pursued the battery prosecution against London due to an honest

-13-

and reasonable belief that London had in fact committed a battery against Athearn when London

was exiting his vehicle, and for no other reason.  It follows that there was no malice.  *See Aleman*

*v. Vill. of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011); *Holland*, 643 F.3d at 255.

London argues that he was prosecuted because he exercised his *Miranda* rights while

being interviewed by Captain Leonard.  Doc. 64 at 5.  The argument is meritless.  London did

not exercise his *Miranda* rights; to the contrary, he was loud, boisterous, belligerent, and

profane, and told Leonard that he may have made contact with Athearn or pushed him as he was

reaching for the ticket.  London's boisterous behavior was, in Captain Leonard's view, consistent

with Officer Athearn's report that London had intentionally elbowed him.  Leonard's subsequent

decision to approve the battery charge was based on a good faith belief that London had

committed battery, not on any impermissible ground.

London also argues that Officer Athearn acted with malice "because [he] believed

[London] had been 'insulting the dignity' of the police."  Doc. 64 at 12.  That argument, too, is

incorrect.  Officer Athearn testified that among the many circumstances that led him to conclude

that London had intentionally rather than accidentally elbowed him was that London "was

insulting the dignity of [Athearn's] office as a police officer by making contact with [him]."  Tr.

31 (Athearn).  Officer Athearn did not mean that he arrested London because London had

insulted him.  Rather, he meant that when an individual subject to police action makes

intentional contact with the officer involved, the officer is entitled to treat the situation very

seriously.  Officer Athearn initiated and continued the prosecution, and Captain Leonard

approved the criminal charge, for the purpose of bringing to justice an individual who, in their

sincere and reasonable view, had struck a police officer for writing a ticket and calling a tow truck. That does not in any way reflect malice.

### Conclusion

For the foregoing reasons, London was not maliciously prosecuted. Judgment will be entered in favor of the United States and against London on the malicious prosecution claim.

April 5, 2013

_____
United States District Judge

-15-